UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN SPURLOCK and
ROMEO LAGONOY,

    Plaintiff(s),    CASE NUMBER: 06-15251
              HONORABLE VICTORIA A. ROBERTS

v.

MARK RAJT, BRUCE GOWER,
and SOUTHERN MICHIGAN INSURANCE
COMPANY, Jointly and Severally,

    Defendants.
_____/

## ORDER

**I. INTRODUCTION**

  Defendants Mark Rajt, Bruce Gower, and Southern Michigan Insurance Company each filed a: (1) Motion for "Summary Judgment" Pursuant to FED. R. CIV. P. 12(b)(6) (Doc. # 15 and 16); (2) Motion for Costs, Expenses, and Attorney Fees Pursuant to 28 U.S.C. § 1927 (Doc. # 18 and 20); and (3) Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (Doc. # 26 and 27). For the reasons stated, the Court **GRANTS** Defendants' motion for summary judgment and motions for sanctions under FED. R. CIV. P. 11. Defendants' motions for costs, expenses and attorneys fees pursuant to 28 U.S.C. § 1927 are **DENIED**.

**II. BACKGROUND**

  Robin Spurlock ("Spurlock") and Romeo C. Lagonoy ("Lagonoy")(collectively "Plaintiffs") filed suit seeking damages for alleged civil rights violations. Named as

defendants are Mark Rajt, a private attorney; Bruce Gower ("Gower"); and Southern Michigan Insurance Company ("SMIC")(collectively "Defendants").  Lagonoy is an attorney licensed to practice in Michigan.  Rajt represents Gower and SMIC.

Plaintiffs' Complaint alleges that Defendants along with the Honorable Marvin Ratner ("Judge Ratner") of 10th district court in Michigan, conspired to violate Plaintiffs' constitutional right to due process and equal protection under the law in a state court proceeding.  This claim arises out of Spurlock's state court action against SMIC for breach of contract.  In 1999, Spurlock and her daughter cosigned an installment contract to a 1997 Chevrolet Cavalier, titled in her daughter's name.  Spurlock added the Cavalier and her daughter, as a second authorized driver, to her SMIC policy.

In September 2000, Spurlock removed her daughter as a driver on the policy.  In February 2001, while parked at Spurlock's home, the Cavalier was stolen.  Spurlock filed a claim with SMIC.  SMIC denied the claim saying that Spurlock did not have an insurable interest in the car.  Spurlock sued SMIC in 36th District Court seeking the cash value or replacement cost of the car because: (1) the premiums on the policy were paid; and (2) as the cosignor on the purchase agreement she had an insurable interest in the car.  Spurlock hired Lagonoy to represent her.  Rajt represented SMIC.

While the case was pending in 36th District Court Lagonoy says Gower, the Vice President of SMIC, informed Rajt that judges in the 10th district court ruled favorably to SMIC when African-American claimants were involved.  Rajt successfully moved to transfer the case from 36th district court in Detroit to 10th district court in Battle Creek, MI.  Judge Ratner was assigned the case.  Defendants filed a motion for summary judgment based on Spurlock not having title to the vehicle.  On August 22, 2003, Judge

Ratner denied the motion and stated that under current case law Plaintiff had an insurable interest in the Cavalier. Thereafter, the parties began settlement negotiations. SMIC offered to settle the case for $1,578.00. Plaintiff rejected the offer several times.

On November 24, 2003, Lagonoy and Rajt had a settlement conference with Judge Ratner. Lagonoy alleges that prior to the settlement conference Judge Ratner engaged in ex-parte communications with Rajt. Lagonoy claims that during these ex-parte discussions Judge Ratner and Rajt agreed to conspire and discriminate against Plaintiffs. He also says that at the settlement conference Judge Ratner warned him that if he did not accept Defendants settlement offer he would deny Plaintiff's pending motion for summary judgment. Lagonoy also asserts that Judge Ratner pointed a finger in his face, warned him that the proceedings would be delayed and the costs of litigation increased, and stated that a jury in Battle Creek, MI would rule against Spurlock. Lagonoy believes Judge Ratner said this because he is Asian-American and Spurlock is African-American.

Lagonoy says that when he did not accept the settlement offer, Judge Ratner "reversed" his August 22, 2003 Order and held there was a genuine issue of fact whether Spurlock had an insurable interest in the Cavalier. Plaintiffs now claim that Judge Ratner's ruling and behavior demonstrate his participation in a conspiracy with Defendants to violate Spurlock's due process rights. Following a bench trial, Judge Ratner ruled in Spurlock's favor.

Plaintiffs' claim they suffered monetary and emotional damages in excess of $75,000.00.

## III. ANALYSIS

### A. Standard of Review

Defendants seek summary judgment under FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle [Plaintiff to] relief." *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "[T]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Rule 12(b) also states that if the motion to dismiss under paragraph (6) "contains matters outside the pleadings, . . . the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b)(6).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). Once the moving party meets its burden, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. When the nonmoving party fails to make this showing and the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir.2000).

Plaintiffs presented matters outside the pleading in their response to Defendants' Motion for Rule 11 sanctions. The Court finds that the documents assist it in understanding the merits of Plaintiffs claim. Therefore, the Court will apply the summary judgment standard in considering Defendants' Rule 12(b)(6) motions.

**B.     Original Complaint**

Plaintiffs' 82 page original complaint was redundant, ambiguous and lacking in clarity. There was nothing "short" or "plain" about Plaintiffs' claims. FED. R. CIV. P. 8(a). Therefore, on January 4, 2007, the Court ordered Plaintiffs to file an amended complaint, not more than five pages. Plaintiffs' filed a fifteen page First Amended Complaint on January 16, 2007. Defendants moved to dismiss the amended complaint

5

for failure to state a claim under FED. R. CIV. P. 12(b)(6). In response, Plaintiffs argue that the original complaint should either be read together with their amended complaint or reinstated because allegations were omitted to comply with the Court's order.

Generally, when a plaintiff files an amended complaint, the new complaint is the legally operative complaint from that point forward. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306-307 (2000). However, in some circumstances when it is clear that a parties' amended complaint is meant to supplement, rather than replace, the original complaint, Courts have viewed the amended and original complaint as one pleading. *See Cooper v. Edlund*, No. 2:05-CV-24, 2006 WL 2086008, *2 (W.D.Mich. July 25, 2006).

The Court reviewed Plaintiffs' original and amended complaint. It is clear that Plaintiff omitted several allegations and facts in an effort to comply with the Court's request. Given this, the Court, over Defendants' objections, will review Plaintiffs' original and amended complaint as one pleading in considering Defendants motions.

**C.    Standing**

Plaintiffs allege that Defendants conspired with Judge Ratner to violate Spurlock's constitutional rights. Defendants say that Lagonoy lacks standing. In response, Lagonoy claims standing requirements are met because he was coerced by Judge Ratner and suffered humiliation as a result of Judge Ratner's rulings.

In *Lujan v. Defenders Wildlife*, 504 U.S. 555 (1992), the Supreme Court established that the "constitutional minimum" of standing requires three elements: (1) the plaintiff must have suffered a personal "injury in fact," either actual or threatened; (2) the plaintiff must show that the injury "fairly can be traced to the challenged action of the

6

defendant"; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Id.* at 560.

In *Lepley v. Dresser*, 681 F.Supp. 418 (W.D.Mich. 1988), the court found that an attorney had no standing to maintain a § 1983 claim against attorneys and a judge, which was based upon their alleged conspiracy "to fix" a lawsuit. *Id.* at 421. The Court reasoned that the plaintiff could not establish "injury in fact' because he was not a party to the state court action and, therefore, had no personal stake in the proceedings. *Id.*

Plaintiff cites one case – *Sharp v. Lucky*, 252 F.2d 910 (5th Cir. 1958) – in opposition to Defendants' argument. In *Sharp*, an African-American attorney, sued the registrar of voters for violations of his civil rights. Sharp, with his African-American client, went to the registrar of voters on legal business. The Defendant refused to assist Sharp and his client because the office was for "whites only." Sharp sued. The district court dismissed his claim. The district court construed his complaint as a suit for interference with the right to practice law, which the court held was not a constitutional violation. The Fifth Circuit reversed and found that Sharp's claim was based on the rights of African-Americans – including Sharp – as a class of persons to have access to non-segregated public offices – not the right to practice law.

Lagonoy, like *Lepley*, was not a party to the state court proceeding. He was Spurlock's attorney. Lagonoy did not have a personal stake in the proceedings and could not have suffered any personal injury from Defendants alleged actions. Plaintiffs' reliance on *Sharp* is misplaced. *Sharp* does not support Plaintiffs' position that an attorney has standing to sue for violations of his client's constitutional rights in a suit in which the attorney had no personal stake.

Without a personal interest in the state court proceeding, Lagonoy lacks standing to pursue this § 1983 claim. Defendants' motions as to him are **GRANTED.**

### D. Section 1983 Conspiracy Claim

"It is well settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under 1983." *Spadafore*, 330 F.3d at 854 (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). The Court finds these complaints are not pled with sufficient specificity to survive Defendants' motions.

To state a claim under § 1983, a plaintiff must first establish that a constitutional violation occurred by a person who was acting under color of state law. *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2002); *see also Parratt v. Taylor*, 451 U.S. 527 (1981). A plaintiff alleging a § 1983 conspiracy must present specific facts demonstrating either the existence or the execution of the claimed conspiracy. Those facts must show a link between the alleged coconspirators and overt acts in furtherance of the conspiracy. Most important, the plaintiff must present facts that the conspirators agreed to commit an act which deprived the plaintiff of a constitutional right.

Spurlock alleges her 14th Amendment due process rights were violated by Defendants' alleged collusion with Judge Ratner. Specifically, she claims Judge Ratner's "reversal" of the August 22, 2003 Order in her favor and comments to Lagonoy; Gowers comment about 10th Circuit Judges favoring SMIC; and Judge Ratner's ex-parte communications with Rajt, demonstrate a conspiracy. Even viewing the allegations in a light most favorable to Sprulock, her allegations do not demonstrate a conspiracy.

Although Plaintiff makes much of Judge Ratner's "ex-parte" communications with Rajt, Plaintiffs' complaint reveals that the alleged conspiratorial communications were a series of phone calls between the Judge, Rajt, and Lagonoy to set up a settlement conference. Lagonoy says that Judge Ratner called Rajt to inquire about the settlement negotiation. Judge Ratner requested that Rajt call Lagonoy and ask him to come into chambers for a settlement conference, which Rajt did. In letters to Lagonoy, Rajt states that Judge Ratner contacted him about assisting the parties in settling the case. *See* Pl. Response to Motion for Sanctions. Defendants point out such communications are permissible under the Michigan Rules of Professional Conduct. *See* Canon 3(A)(4)(a)(i-ii).

Plaintiff asserts that at this stage in the proceedings she must only allege that a conspiracy existed. However, her allegations fail to identify a conspiratorial objective, plan, or an agreement between Judge Ratner and Defendants. Plaintiff only points to these series of phone calls and a statement made by Gower before the case was transferred to Judge Ratner. These allegations are simply insufficient to state a claim for conspiracy under § 1983.

In addition, Plaintiff argues that Judge Ratner's December 15, 2003 finding that there were genuine issues for trial constitutes a due process violation. Defendants point out that courts are allowed under the Michigan Rules of Civil Procedure to review and reverse their decisions. In the December 15, 2003 hearing on the Plaintiff's motion for summary judgment, Judge Ratner stated that his order denying Defendants' motion for summary judgment "in effect meant disputed issues of fact existed regarding Plaintiff's insurable interest" and that he meant to say, perhaps more clearly, that a reasonably

9

jury could find that Plaintiff had an insurable interest.

But even if it is true that Judge Ratner's denial of Plaintiffs' motion for summary judgment constitutes a "reversal" of his prior decision, it would fail to rise to the level of a constitutional violation. Plaintiff presents no allegations or evidence, circumstantial or otherwise, that Defendants persuaded Judge Ratner to do so or acted in concert with him. Moreover, Judge Ratner's statements in the December 15, 2003 hearing makes clear that the August, 2003 Order did not hold Spurlock had an insurable interest as a matter of law – only that genuine issues existed for trial. *See* Pl. Response to Motion for Sanctions. Significantly, Judge Ratner ultimately rendered a decision in Spurlock's favor.

The Court finds that no reasonable juror could infer that a conspiracy to violate Plaintiff's civil rights existed. Nor is there evidence that a constitutional violation actually occurred as a result of Defendants' conduct. It is clear that Plaintiff's claims are based on pure speculation.

Accordingly, Spurlock's claim fails as a matter of law. The Court **GRANTS** Defendants' motion.

### E. Rule 11 Sanctions

Defendants seek sanctions against Lagonoy under F$_{\text{ED}}$. R. C$_{\text{IV}}$. P. 11. Defendants argue that Lagonoy, an attorney, should have known better than to file a frivolous claim. Specifically they assert that it was unreasonable for Lagonoy to believe he had standing to bring a claim in light of prevailing case law. Likewise, Defendants assert that Lagonoy's belief that they acted with Judge Ratner to violate Spurlock's rights over a $4,000.00 claim is purely fantastical.

In response, Lagonoy reiterates his allegations and argues the claim is meritorious. Lagonoy also asserts that given further discovery he could sufficiently prove his claim.

Federal Rule of Civil Procedure 11 prohibits attorneys from filing any "pleading, written motion, or other paper," unless "to the best of the [attorney]'s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b). In the Sixth Circuit, the test for whether Rule 11 sanctions are appropriate is whether the conduct for which sanctions are sought was "reasonable under the circumstances." *Salkil v. Mount Sterling Tp. Police Dept.*, 458 F.3d 520, 528 (6th Cir. 2006). Although the district court has wide discretion to determine whether conduct is "reasonable under the circumstances," the Sixth Circuit warns that "the court is expected to avoid using the wisdom of hindsight and should test [counsel]'s conduct by inquiring what was reasonable to believe at the time [counsel acted]." *Id.* at 530.

A showing of "good faith" belief in a claim is not "sufficient to avoid sanctions."

11

*See Herron v. Jupiter Transportation Co.,* 858 F.2d 332, 334-35 (6th Cir.1988). Plaintiffs' complaint was void of any facts or evidence to support a claim of civil conspiracy. It is unlikely that further discovery would lead to a tenable claim. Moreover, Defendants' complied with the "safe-harbor"procedural requirements of Rule 11(c), which gives a plaintiff 21 days notice of a motion for sanctions. Thus, Lagonoy knew the Court could sanction him and had the opportunity to withdraw the claim.

The Court finds that sanctions are appropriate to deter future conduct and compensate Defendants for defending this utterly baseless claim, as described above. Although Defendants request costs and attorney fees, they did not submit a bill of costs with their motions. Nevertheless, the type and amount of sanctions are within the sole discretion of this Court. *Orlett v. Cincinnatti Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992). The Court imposes monetary sanctions on Lagonoy and his law.

### F. Attorney Fees and Costs under 28 U.S.C. § 1927

Defendants' request for costs, expenses, and attorney fees pursuant to 28 U.S.C. § 1927 is denied. Defendants argue that Lagonoy, an attorney, advanced a frivolous claim which unreasonably and vexatiously multiplied proceedings and, therefore, he should personally pay their costs incurred.

"Section 1927 provides that any attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" 28 U.S.C. § 1927. The Court may impose sanctions under § 1927 when "'an attorney reasonably should know that a claim pursued is frivolous.'" *Salkil v. Mount Sterling Tp. Police Dept.*, 458 F.3d 520, 532 (6th Cir. 2006). The Sixth

Circuit holds, however, that "'an award of attorneys' fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct'" – not simple inadvertence or negligence. *Id.*

Although troubling, the Court finds that Lagonoy's conduct did not unreasonably multiply the proceedings such that excessive costs were incurred.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' motion for summary judgment and Defendants' motion for Rule 11 sanctions against Lagonoy and his law firm only. The amount of the sanctions imposed will be decided after Defendants submit an itemization of their reasonable expenses and attorney fees incurred in presenting their motions for sanctions. FED. R. CIV. P. 11(C)(1)(A). This itemization is to be filed no later than July 31, 2007.

Defendants' motion for cost, expenses and attorney fees pursuant to § 1927 is **DENIED.**

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 23, 2007

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 23, 2007.

s/Linda Vertriest
Deputy Clerk

---